# UNITED STATES DISTRICT COURT
# DISTRICT OF DELAWARE

| | |
|---|---|
| **Fraud Free Transactions LLC,** | |
| *Plaintiff,* | Case No. _____ |
| v. | |
| **Okta, Inc.,** | **JURY TRIAL DEMANDED** |
| *Defendant.* | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Fraud Free Transactions LLC ("FFT") files this Complaint against Okta, Inc. ("Okta") and alleges:

## I.   NATURE OF THE ACTION

1. This is an action for infringement of United States Patent No. 12,229,768 ("the '768 Patent") under the United States Patent Laws, 35 U.S.C. § 1 *et seq*.

## II.   THE PARTIES

2. Plaintiff FFT is a Delaware limited liability company with its registered office located at VCORP Services LLC, 108 W. 13th Street, Suite 100, Wilmington, Delaware 19801.

3. Upon information and belief, Defendant Okta is a corporation organized under the laws of Delaware with its registered agent located at Incorporating Services, Ltd., 3500 S. Dupont Hwy, Dover, Delaware 19901.

### III. JURISDICTION AND VENUE

4. This is a civil action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*, including 35 U.S.C. §§ 271, 281, and 284–285.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

6. This Court has personal jurisdiction over Okta because Okta is a Delaware corporation and has purposefully availed itself of the benefits and protections of Delaware state law by incorporating under Delaware law.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1891 and 1400(b), because Okta is a Delaware corporation and thus resides in this District.

### IV. BACKGROUND

8. Dr. Michael Sasha John ("Dr. John") is a named inventor on more than 110 patents directed to the areas of signal processing, computer algorithms, and statistical analysis of biological signals. Many of Dr. John's patents have been successfully licensed and serve as the core intellectual property of several companies.

9. In 2007, with the goal of preventing online identity fraud, Dr. John designed an innovative process for verifying electronic identities and transactions to enhance the legitimacy, authenticity, and validity of online transactions.

10. Identity verification in online transactions is different and more difficult than in-person transactions because both parties are effectively anonymous and neither party knows if it can trust the other.

11. Either party may receive a request that is from a potentially malicious actor. The request may be simply fraudulent, or it may be a "man-in-the-middle" attack where a malicious

actor can interpose themselves into a communication stream and intercept, alter and steal information relayed between two parties.

12. The absence of visual indices of possible fraud renders the in-person identity verification techniques inapplicable to online transactions and necessitates a verification technique suitable for online transactions. But conventional identity verification techniques over computer networks suffer from certain shortcomings.

13. Traditional out-of-band communication techniques, such as phone calls or texts, for example, do not solve the "man-in-the-middle" problem because a malicious actor could intercept and spoof the calls or texts. Even if the verification request required some personal information, malicious actors could intercept the verification request and relay the request and response.

14. Other traditional online user verification techniques such as using a username and password are even less secure because that information can be stolen and easily used by unauthorized individuals. Secondary verification (phone calls or texts) on unsecured channels has the same source verification problems noted above. Malicious actors can even request information by "faking" communication from an organization such as a request to verify a password in a technique known as "phishing."

15. To resolve the issues of potential phishing, spoofing, and data interception of the traditional identity verification techniques, Dr. John recognized that, among other things, a dedicated fraud prevention application installed on a predefined and thus trusted out-of-band mobile phone could improve the security of the verification method by providing a secure end point and encrypted communication.

16. This solution has the benefit of providing assurances that communication from either end originated from the intended source, preventing malicious actors from passing off

themselves as legitimate. This solution also has the benefit of integrating active participation of the authorized user and the software/service provider that certifies the phone as a device approved for use in verification, thereby increasing security.

17. Dr. John's invention, *inter alia*, also taught ways to improve the security of user data when such data was used for verification. For example, Dr. John recognized that use of a third-party login through a trusted third party, with whom a user has a pre-existing relationship, and which the entity seeking verification trusts, allowed for secure and trusted verification of a user without the user having to expose its verification data to the entity seeking verification.

18. Dr. John filed several patent applications related to identity authentication over a computer network—resulting in multiple granted patents including the '768 Patent. In the '768 Patent, the claimed invention provides a specific solution to issues of traditional identity verification techniques, e.g. potential phishing, spoofing, and data interception, *inter alia*, through 1) use of a dedicated fraud prevention application installed on a trusted out-of-band mobile phone to provide a secure end point and encrypted communication; and 2) use of a third-party login to provide a reliable, convenient and safer authentication solution through a trusted third-party platform.

19. Dr. John co-founded Koakia ("Koakia") in 2009 to develop a platform for real-time identity and transaction verification and proactive online fraud prevention. Koakia is the predecessor-in-interest of FFT.

20. Dr. John worked to develop a functional and scalable prototype, user interface, and business materials under the name Fraud Free Transactions while actively seeking capital to commercialize the technology.

21. On July 31, 2024, Dr. John assigned the '768 Patent to FFT.

## V.     THE ASSERTED PATENT

22. The U.S. Patent and Trademark Office issued the '768 Patent, titled "Fraud Deterrence for Secure Transactions," on February 18, 2025. A true and correct copy of the '768 Patent is attached as Exhibit 1.

23. FFT is the owner by assignment of the '768 Patent.

## VI.     THE OKTA ACCUSED PRODUCTS

24. FFT incorporates by reference the preceding paragraphs.

25. The Okta products accused in this lawsuit ("Okta Accused Products"), as presently known to FFT, are Okta's identity management services including the "Customer Identity and Access Management" ("CIAM"), "Workforce Identity Cloud" ("WIC"), and "Okta Verify," including cloud-based and customer-hosted versions of these systems.

26. Upon information and belief, the CIAM allows companies to provide end users access to various digital property, while governing, collecting, analyzing, and storing the users' data.

27. Upon information and belief, the WIC allows employers to provide their employees secure access using various services such as the Single Sign-On ("SSO"), Adaptive Multi-factor Authentication ("MFA"), and FastPass, at least some of which may be used together.

28. Upon information and belief, Okta Verify is an authenticator that allows users to confirm their identity when they sign in to their Okta account or access Okta-protected resources.

29. Upon information and belief, two different "engines" are employed to support Okta's products: Okta Classic Engine ("OCE") and Okta Identity Engine ("OIE").

30. Upon information and belief, the OCE provides a comprehensive set of features for managing user identities, authentication, SSO, and access control, while the OIE focuses on

dynamic authorization to enable organizations to create custom access policies and rules to control access to resources.

31. Upon information and belief, the OCE and OIE employ a Behavior Detection and Evaluation feature to analyze patterns of user behavior and create profiles of typical patterns based on previous activity.

32. Upon information and belief, the profiles created by the Behavior Detection and Evaluation feature are used to define sign-on policy rules that respond to changes in user behavior, where a policy is configured to require multifactor authentication if a user has a change in behavior (*e.g.,* user signs in from a new location or uses a new device).

33. Upon information and belief, Okta Verify works with OIE and OCE to perform multifactor authentication by, for example, providing push notification sent to a mobile application associated with Okta Verify.

## VII.   COUNT 1
## INFRINGEMENT OF THE '768 PATENT BY OKTA

34. FFT incorporates by reference the preceding paragraphs.

35. Okta has directly infringed and continues to directly infringe, literally or under the doctrine of equivalents, at least claims 8, 9, and 10 of the '768 Patent by making, using, offering to sell, and/or selling (directly or through intermediaries) in this District and elsewhere in the United States, and/or importing into the United States, the Okta Accused Products.

36. Claims 8, 9, and 10 of the '768 Patent, which depend from independent claim 1 via the intervening dependent claim 2 (reproduced below), recite:

> **1.** A non-transitory computer readable storage medium storing instructions that, when executed by one or more processors, configure one or more executing processors to:

    receive a request from a requesting user identified in conjunction with the request, for utilization of a software program for which an identity validation rule set has been designated as a requirement for use, wherein the rule set includes a plurality of verification steps based on one or more characteristics, determinable by the one or more processors pursuant to the instructions, and designated for use in a validation analysis, the one or more characteristics including at least one of a device-identifier associated with a device from which the request originated, an IP address from which the request originated, or a geographic location from which the request originated;

    perform the validation analysis, including the plurality of verification steps according to the rule set, to determine whether at least one multi-factor authentication (MFA) action associated with at least one of the verification steps is required, based on results of one or more combinations of determinations, the combinations defined by respective ones of the verification steps and based at least in part on the characteristics,

    wherein the one or more combinations of determinations include at least one determination of a plurality of determinations that the instructions configure the one or more processors to make, the plurality of determinations including:

    determination of whether the device-identifier corresponds to one or more device identifiers defined for the requesting user based on at least one prior request from the requesting user,

    determination of whether the IP address corresponds to one or more IP addresses defined for the requesting user, the one or more IP addresses based at least in part on the at least one prior request from the requesting user,

    determination of whether the geographic location corresponds to one or more permissible geographic locations, wherein the instructions configure the one or more executing processors to utilize the IP address to determine the geographic location,

    determination of risk associated with the IP address based on comparison of the IP address to one or more IP addresses having a designation of risk associated therewith, and

    determination of whether an aspect of the request indicates that a proxy server may have been used in routing the request, and

    wherein a first verification step of the verification steps defines at least one first condition, for requiring at least a first MFA action, as a function of first results of analysis of the one or more first ones of the combinations of determinations defined by the first verification step,

the at least one first condition based at least in part on first present values for first ones of the characteristics associated with the first ones of the combinations matching first expected values defined for the first ones of the characteristics in conjunction with the first verification step,

wherein a second verification step of the verification steps defines at least one second condition, for requiring at least a second MFA action, as a function of second results of analysis of one or more second one of the combinations of determinations defined by the second verification step, the at least one second condition based at least in part on second present values for second ones of the characteristics associated with the second ones of the combinations not matching second expected values defined for the second ones of the characteristics in conjunction with the second verification step, and

wherein a third verification step of the verification steps defines at least one third condition for fulfilment of the request, in the absence of any MFA action, as a function of third results of analysis of one or more third ones of the combinations of determinations defined by the at least the third of the verification step, the third condition based on third present values for third ones of the characteristics associated with the third ones of the combinations matching expected values defined for the third ones of the characteristics in conjunction with the third verification step;

instruct, responsive to the at least one first or second condition being met for at least one of the respective first or second verification steps, the requesting user to undertake the at least one respective first or second MFA actions defined for the at least one of the first or second verification steps for which the at least one first or second condition was respectively met;

receive one or more MFA results of the at least one respective first or second MFA actions having been undertaken; and

fulfil the request for the software program, responsive to the MFA results indicating successful authentication.

2. The non-transitory storage medium of claim **1**, wherein one or more of the first, second or third expected values respectively defined for one or more of the first, second or third ones of the characteristics are based on data gathered from the at least one prior request and wherein at least one of the first or second MFA actions is defined by a respective one of the first or second verification steps as one or more choices of a plurality of MFA actions.

      **8.**     The non-transitory storage medium of claim **2**, wherein at least one of the first or second MFA actions include logging into a third-party account belonging to the requesting user.

      **9.**     The non-transitory storage medium of claim **2**, wherein at least one of the first or second MFA actions include utilizing a designated fraud prevention application to confirm validity of the request.

      **10.**     The non-transitory storage medium of claim **9**, wherein the designated fraud prevention application includes an out-of-band application installed on a mobile device.

      37.     As briefly explained above, verifying a user's identity via "logging into a third-party account belonging to the requesting user," as taught in claim 8, improves the security of the requesting user's data because it allows the user to gain access to the desired entity without having to expose its verification data to that entity. Instead, the requesting user can gain access to the desired entity using a trusted third party, with whom the user has pre-existing relationship, and which the entity seeking verification trusts. In addition to increasing security, this process also streamlines the identity verification process. This technologically rooted solution solves, among other things, at least the problem arising from the anonymity of actors on the Internet by allowing the user to use a less-anonymous actor (from that user's perspective) for handling of sensitive information.

      38.     Likewise, as taught by claims 9 and 10, verifying a user's identity via "a designated fraud prevention application" installed on a predefined, and thus trusted, out-of-band mobile phone improves the security of the verification method by providing a secure endpoint and encrypted communication. Installation of such an application requires an affirmative step by the user and can require active participation of the service provider, which can include affirmatively designating an acceptable out-of-band channel for a particular user. Using a designated fraud prevention

application provides improved assurances that communication from either end has originated from the intended source, as well as securing the communication, both aspects enhancing safeguards against malicious actors from passing off themselves as legitimate. Still further, verifying a user's identity via "a designated fraud prevention application" integrates active participation of the authorized user through the designated out-of-band channel thereby increasing security.

39. As detailed in the exemplary claim chart attached as Exhibit 2, the Okta Accused Products infringe at least claims 8, 9, and 10 of the '768 Patent. FFT incorporates Exhibit 2 into its Complaint by reference. The allegations in Exhibit 2 are made on information and belief and are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery. As explained in detail in Exhibit 2, the Okta Accused Products practice every element of at least claims 8, 9, and 10 of the '768 Patent and therefore Okta infringes the '768 Patent.

40. This infringement of the '768 Patent has caused damage to FFT, and FFT is entitled to recover damages adequate to compensate FFT for Okta's infringement.

41. FFT has also suffered, and will continue to suffer, irreparable harm because of Okta's infringement of the '768 Patent for which there is no adequate remedy at law, unless the Court enjoins Okta's infringement. Accordingly, FFT seeks a permanent injunction enjoining Okta from making, using, selling, offering to sell, and/or importing the Okta Accused Products and/or otherwise infringing, or inducing or contributing to the infringement of the '768 Patent.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, FFT asks the Court to:

A. Find that Okta has directly infringed, either literally or under the doctrine of equivalents, at least one claim of the '768 Patent;

B.   Award FFT damages adequate to compensate it for Okta's infringement of the '768 Patent through the date of judgment, with pre-judgment interest, and for any supplemental damages as appropriate and post-judgmental interest after that date;

C.   Enter a permanent injunction against Okta and those in privy or active concert with it against further infringement of the '768 Patent, or alternatively, award FFT a compulsory ongoing licensing fee;

D.   Find that this is an exceptional case within the meaning of 35 U.S.C. § 285 and award FFT attorney fees, costs, and expenses incurred in connection with this action; and

E.   Award FFT such other and further relief at law or equity as this Court deems just and proper.

## IX.   DEMAND FOR JURY TRIAL

FFT requests a trial by jury.

Dated: March 11, 2025

Respectfully submitted,

Of Counsel:

John S. LeRoy
Thomas A. Lewry
Sangeeta G. Shah
Reza Roghani Esfahani
**BROOKS KUSHMAN P.C.**
150 W. Second St., Suite 400N
Royal Oak, Michigan 48067-3846
(248) 358-4400 / Fax:  (248) 358-3351
Email: jleroy@brookskushman.com
   tlewry@brookskushman.com
   sshah@brookskushman.com
   resfahani@brookskushman.com

/s/ *Helena C. Rychlicki*
Helena C. Rychlicki (DE No. 3996)
Megan Ix Brison (DE No. 6721)
**PINCKNEY, WEIDINGER, URBAN & JOYCE LLC**
2 Mill Road, Suite 204
Wilmington, DE 19806
Telephone: 302-504-1497
hrychlicki@pwujlaw.com
mixbrison@pwujlaw.com

*Attorneys for Plaintiff*